UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. BALES,<br><br>          Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 12-08061-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR AN AWARD OF BENEFITS |

**PROCEEDINGS**

On September 18, 2012, Matthew D. Bales ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on December 26, 2012. On May 22, 2013, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and remanded for an award of benefits.

**BACKGROUND**

Plaintiff is a 52-year-old male who applied for Social Security Disability Insurance benefits on June 29, 2009. (AR 28.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 23, 2009, the alleged onset date of his disability. (AR 30.)

Plaintiff's claim was denied initially on November 19, 2009, and on reconsideration on February 14, 2010. (AR 28.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Edward C. Graham on February 2, 2011, in Palmdale, California. (AR 28.) Claimant appeared and testified at the hearing and was represented by counsel. (AR 28.) Vocational expert ("VE") Randi Langford-Hetrick also appeared and testified at the hearing. (AR 28.)

The ALJ issued an unfavorable decision on February 9, 2011. (AR 28-35.) The Appeals Council denied review on July 21, 2012. (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ erred in rejecting the functional capacity assessments of treating physicians Ho and Lawenda and of examining physician Hasan.
2. Whether the finding that Plaintiff's subjective complaints are not credible is based on a proper legal analysis and is supported by substantial evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine

whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since June 23, 2009, the alleged onset date. (AR 30.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: fibromyalgia and degenerative disc disease. (AR 30.)

4

At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 30.)

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (AR 30-34.) In determining the RFC, the ALJ made an adverse credibility determination. (AR 31.)

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a truck driver and plumber. (AR 34.) In the alternative, the ALJ also found that there are a significant number of jobs in the national economy that Plaintiff could perform, including hand packager, warehouse laborer, cashier, storage facility clerk, final assembler and order clerk. (AR 34-35.)

Consequently, the ALJ determined that Claimant was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. (AR 35.)

## DISCUSSION

The ALJ decision must be reversed. The ALJ improperly rejected numerous physician opinions that Plaintiff's fibromyalgia was disabling. The ALJ also improperly rejected Plaintiff's credibility. The ALJ's RFC and non-disability determination are not supported by substantial evidence nor free of legal error.

**I.    THE ALJ IMPROPERLY REJECTED THE TREATING PHYSICIAN OPINIONS**

Plaintiff contends the ALJ improperly rejected medical opinion evidence regarding Plaintiff's fibromyalgia. The Court agrees. The ALJ failed to provide specific, legitimate reasons supported by substantial evidence for rejecting extensive medical opinion evidence that Plaintiff suffers from disabling fibromyalgia.

**A.    Relevant Federal Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.     Fibromyalgia**

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). In Benecke, the Ninth Circuit determined that fibromyalgia can be disabling. It described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n.1 (8th Cir. 2003). Common symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th Cir. 1991). Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

Id. at 589-90; see also Harman v. Apfel, 211 F.3d 1172, 1179-81 (9th Cir. 2000) (reversing ALJ decision denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (upholding benefits for fibrositis, now known as fibromyalgia).

Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 877 (9th Cir. 2004) (overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc)), a case in which benefits were denied for fibromyalgia, recognized

that the accepted diagnostic test for fibromyalgia is that Plaintiff must have pain in 11 of 18 tender points. See also Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001). Objective tests, such as myelograms, are administered to rule out other diseases and alternative explanations for the pain, but do not establish the presence or absence of fibromyalgia. Jordan, 370 F.3d at 873, 877. It cannot be objectively proven. Id. at 877. The symptoms can be worse at some times than others. Id. at 873. The Ninth Circuit recognizes fibromyalgia as a physical rather than a mental disease. Id. The most appropriate specialty for evaluating fibromyalgia is rheumatology. Benecke, 379 F.3d at 594 n.4 ("[r]heumatology is the relevant specialty for fibromyalgia").

Recently (after the ALJ decision here was issued), the Commissioner issued SSR 12-2p on "Evaluation of Fibromyalgia." SSR 12-2p is largely consistent with the American College of Rheumatology ("ACR") criteria and Benecke, and states that "FM can be the basis for a finding of disability." It requires an acceptable medical source diagnosis supported by treatment notes establishing widespread pain that may fluctuate in intensity and may not always be present, 11 of 18 tender points and evidence that other disorders have been excluded. Common symptoms include widespread pain in the joints, muscles and soft tissue, fatigue, cognitive or memory problems ("fibro fog"), depression, anxiety, muscle weakness, and dizziness, among others.

**C.     Analysis**

There is considerable medical evidence of Plaintiff's fibromyalgia. No fewer than seven doctors diagnosed Plaintiff with fibromyalgia. Mr. Bales' treating physician Dr. Vincent Ho, an internist, submitted a Fibromyalgia Impairment Questionnaire dated December 2, 2009. (AR 360-365.) Dr. Ho stated that Plaintiff met the ACR criteria for fibromyalgia and also diagnosed the impairments of low back pain and sleep apnea. (AR 360.) He reported 11 of 18 tender points. (AR 360.) He also reported symptoms of extreme fatigue and pain all over. (AR 361.) He found pain in the spine, shoulders, hips, legs, etc. (AR 361-362.) He listed Mr. Bales' numerous medications that have the side effect of making him sleepy. (AR 362.) Dr. Ho provided an RFC assessment that Plaintiff can sit for only 1 hour in a 8-hour day, lift and carry up to 5 pounds only occasionally and is incapable of even low stress jobs. (AR 363.) He also

opined that Plaintiff would have to take unscheduled breaks every 15 minutes and would miss work more than 3 times a month. (AR 364.) He further assessed no pushing, pulling, kneeling, bending and stooping. (AR 364-365.) Dr. Ho also provided a September 1, 2009, letter stating that Mr. Bales is a truck driver and has sleep apnea, and "he has severe fibromyalgia and requires constant pain medications, which makes him sleepy at work and [unable to] drive or concentrate. That is why he is disabled and cannot engage in any gainful employment." (AR 368.) In a similar note dated June 13, 2009, Dr. Ho stated, "Mr. Bales is totally disabled and will not be driving trucks anymore." (AR 265.)

Dr. Ho had referred Plaintiff to a rheumatologist, Dr. Ahmed, who found positive trigger points and marked tenderness of the paraspinal muscles. (AR 272-273.) He conducted lab tests to rule out other explanations before concluding that Mr. Bales' symptoms are most consistent with fibromyalgia and met ACR criteria. (AR 273.) He prescribed medications. (AR 273.)

When the medications prescribed by Dr. Ahmed did not relieve his pain (AR 391, 392), Dr. Ho then referred Plaintiff to a pain management specialist, Dr. Udaya da Silva. (AR 467-475.) Mr. Bales described constant, increasing back and leg pain to Dr. da Silva who diagnosed fibromyalgia and sleep apnea. (AR 467, 470.)

Plaintiff also presented to several Kaiser physicians. Dr. Steven Lawenda, a family medicine practitioner, submitted a Fibromyalgia Impairment Questionnaire dated March 5, 2010. (AR 406-411.) Dr. Lawenda found tender points and tender paraspinal muscles (AR 406) and severe and persistent arthralgias and myalgias. (AR 407.) He opined Plaintiff can sit for 4 hours in an 8-hour day, stand/walk for 1 hour, lift and carry up to 10 pounds occasionally. (AR 409.) He assessed no pushing, pulling kneeling, bending or stooping. (AR 44.) Like Dr. Ho, Dr. Lawenda found that Plaintiff was incapable of even low stress jobs (AR 409) and likely would miss work more than three times a month. (AR 410.) He provided another similar Fibromyalgia Impairment Questionnaire dated August 18, 2011, to the Appeals Council which made it part of the record. (AR 583-588.)

A Kaiser rheumatologist, Dr. Syed Amjad Hasan, found soft tissue tender/trigger points sufficient to diagnose fibromyalgia. (AR 505.) He also diagnosed PTSD and depression. (AR 505.) Dr. Hasan submitted a Fibromyalgia Impairment Questionnaire dated August 10, 2010. (AR 477-482.) He assessed an RFC that Claimant can sit for 4 hours in an 8-hour day, stand/walk 1 hour, lift/carry 20 pounds occasionally and no pushing, pulling, kneeling, bending or stooping. (AR 33, 4479, 481-482.) He too opined that Plaintiff was incapable of even low stress jobs and would miss work more than 3 times a month. (AR 479, 481.)

Dr. Lawenda also referred Mr. Bales to pain management specialist Dr. Craig Chang who in August 2010 found classic tender points of fibromyalgia, with all 18 tender points positive. (AR 497-501.) Claimant reported severe symptoms of low back pain, aching in all the joints, muscle aching, poor walking, standing, and endurance, and generalized fatigue. (AR 495.) Dr. Chang made the same findings in a September 15, 2010, treatment note. (AR 484-486.)

Despite all of the medical evidence of fibromyalgia cited above, the ALJ found Claimant had not established his fibromyalgia:

> The undersigned notes that the medical records do not establish the diagnostic criteria for fibromyalgia. The evidence merely reflects subjective pain complaints and subjective tenderness or "excess" tenderness. This is not sufficient to establish a diagnosis of fibromyalgia.

(AR 32.) Paradoxically, the ALJ elsewhere found that Claimant has the severe impairment of fibromyalgia. (AR 30.) Dr. Sedgh, an internist whose opinion the ALJ credits, also found evidence of multiple tender points and diagnosed fibromyalgia, bringing to seven the number of physicians who did so. (AR 342, 344.) No treating or examining physician ever said Plaintiff did not have fibromyalgia. The ALJ is plainly wrong that the medical records do not meet the diagnostic criteria for fibromyalgia. Virtually all of the physicians found Claimant to have 11 or more tender points out of 18, the accepted ACR diagnostic criteria for fibromyalgia. The ALJ is also wrong in saying fibromyalgia is not diagnosed on the basis of subjective pain complaints, as noted previously, and provides no medical support in the record or elsewhere for his

assertions. The ALJ may not substitute his own unqualified medical opinion for that of numerous treating and examining physicians. Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); Almarez v. Astrue, 2010 WL 3894646, *10 (C.D. Cal. 2010). Additionally, several physicians specifically found that Claimant was not a malingerer. (AR 362, 408, 480, 585.) The ALJ's finding, then, is not only unsupported by the medical evidence but contrary to it. The ALJ is responsible for resolving conflicts in the medical evidence, Andrews, 53 F.3d at 1039, and should not be second-guessed if his interpretation of the evidence is reasonable, Rollins, 261 F.3d at 857, but the ALJ's finding is plainly unreasonable.

The ALJ observed that a diagnosis of fibromyalgia "does not in and of itself show that the person is non-functional or that he has any functional limitations." (AR 32.) The six physicians above, however, not only diagnosed fibromyalgia but made RFC assessments that preclude all work. Their assessments are supported by treatment records that also indicate substantial testing and lab work to rule out other possible causes of Plaintiff's symptoms. Plaintiff has been prescribed multiple, powerful opioid medications that provide some relief for his pain but still do not control it and cause significant side effects like drowsiness and dizziness that interfere with his functioning. The Claimant, for example, testified that medication side effects make him dizzy and unable to drive. (AR 165-54.) His treating physician twice stated he could not drive. (AR 368, 256.) The ALJ failed to consider the side effects of multiple, strong opioid medications on Claimant's ability to work. Similarly, the ALJ made no reference anywhere in his decision to mental impairments. Claimant's physicians diagnosed depression and PTSD which can affect concentration and focus.

The ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of the HHS, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds, see Bunnell, 912 F.2d at 1153-54)). Under Varney, an ALJ may not reject a claimant's testimony about the subjective limitations of medication side effects without making specific findings similar to those required for excess pain testimony.

1  Varney, 846 F.2d at 585.  Medication side effects must be severe enough to interfere with the
2  ability to work.  Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001).   Here, they were.
3         The ALJ found that the objective medical records "do not show . . . severe functional
4  restrictions on the use of her [sic] bilateral upper extremities or bilateral lower extremities, or
5  that affects her [sic] mobility, or his ability to sit, stand, walk, move about, use his arms, fingers,
6  feet, turn and twist his body." (AR 32.)  He also found that the medical records "do not show
7  any severe functional limitations secondary to pain."  These findings are not supported by
8  substantial evidence and are contrary to the record.  The ALJ in effect is requiring objective
9  evidence of exertional musculoskeletal or neurological limitations that are inconsistent with an
10 impairment whose symptoms are non-exertional and cannot be proven by objective evidence:
11 pain, sleep disturbance, dizziness, depression, inability to concentrate, etc., all of which are
12 amply documented in the physician treatment records here.  Neither Benecke nor SSR 12-2p
13 require the kind of evidence that the ALJ improperly demands here.
14        The ALJ also rejected the physician evidence because he found that Plaintiff's subjective
15 symptom complaints are not credible.  (AR 31.)  An ALJ may reject a physician's opinion based
16 on discredited subjective symptoms.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
17 (treating physician's opinion based on subjective complaints of claimant whose credibility has
18 been discounted properly disregarded); Andrews, 53 F.3d at 1043 ("an opinion of disability
19 premised to a large extent upon claimant's own accounts of his symptoms and limitations may
20 be disregarded once those complaints have themselves been properly discounted").  As noted
21 below, however, the ALJ improperly discounted Plaintiff's credibility.
22        The ALJ gave less weight to the opinions of Dr. Ho, Dr. Lawenda and Dr. Hasan than to
23 the opinions of Dr. Sedgh and the State agency reviewers.  (AR 33.)  The ALJ does not mention
24 the opinions of Dr. Ahmed, Dr. da Silva or Dr. Chang but presumably would reject them on the
25 same basis as the others.  The ALJ's reliance on the opinion of Dr. Sedgh, however, is
26 misplaced.  Dr. Sedgh, a consulting internist who examined Plaintiff once, provided a full range
27 of medium work assessment which the ALJ embraced as his RFC.  (AR 33, 30.)  Dr. Sedgh did
28 not review any medical records (AR 340-345) and his September 17, 2009, report predated

most of the medical evidence which Dr. Sedgh obviously did not see. The later medical reports indicate Plaintiff's condition was worsening (AR 452), and also contain diagnoses of depression and PTSD. (AR 505.) The opinion of a consulting examiner based on a one-time examination of the claimant with no review of the medical records is of little value. Reddick v. Chater, 157 F.3d 715, 727 (9th Cir. 1998). Dr. Sedgh's RFC opinion is not a specific, legitimate reason for rejecting the RFC opinions of six other physicians, including treating opinions and the opinions of specialist rheumatologists.

The ALJ also relies on the October 12, 2009, opinion of non-examining State agency reviewing physician, Dr. R. Halpern, who reaffirmed Dr. Sedgh's RFC. (AR 351-356.) Dr. Halpern's opinion, however, is of no probative value in view of the Court's rejection of Dr. Sedgh's opinion. His opinion also lacks value because it was given in October 2009 before much of the medical evidence was submitted.

Two other State reviewing physicians also affirmed Dr. Sedgh's opinion. (AR 357-358, 403-404.) Both of these physicians improperly disregarded Dr. Ho's opinion of disability as an issue reserved to the Commissioner. Social Security regulations do make clear that treating source opinions on issues reserved to the Commissioner such as disability, RFC and the Listings are not binding, controlling, or given special significance. 20 C.F.R. § 1527(e)(1), (2) and (3); 20 C.F.R. § 416.927(e)(1), (2) and (3); SSR 96-5p (1996 WL 374183). That those issues are reserved to the Commissioner, however, does not mean that treating source opinions on those issues are irrelevant or can be ignored. SSR 96-5p, at *3, after acknowledging treating source opinions are not controlling on certain issues, explicitly states that "opinions from any medical source on issues that are reserved to the Commissioner must never be ignored." On the issue of whether a claimant is disabled, SSR 96-5p, at *5 also says that medical opinions on these issues "must not be disregarded." Because the reviewing physicians did not address the bases of Dr. Ho's opinion, their opinions are of little value.

The ALJ did not provide specific, legitimate reasons for rejecting the medical opinions and RFC assessments of six physicians who found Plaintiff's fibromyalgia to be disabling.

**II.   THE ALJ IMPROPERLY DISCOUNTED PLAINTIFF'S CREDIBILITY AS TO HIS SUBJECTIVE SYMPTOMS**

Plaintiff contends that the ALJ improperly discounted his credibility. The Court agrees.

**A.   Relevant Federal law**

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell, 947 F.2d at 346; see also Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1281-82 & n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins at 856-57; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.   Analysis**

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause his alleged symptoms. (AR 31.) The ALJ, however, found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were not credible to the extent inconsistent with the ALJ's RFC assessment. (AR 31.) Because the ALJ made no finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility. Smolen, 80 F.3d at 1283-84. The ALJ failed to do so.

The ALJ's first reason for discounting Plaintiff's credibility is that his "subjective complaints and alleged limitations are out of proportion to the objective clinical findings and observed functional limitations." (AR 31.) This finding fails for two reasons. First, the Court already has noted that fibromyalgia cannot be proven objectively. Jordan, 370 F.3d at 877. Plaintiff meets the ACR tender points diagnostic criteria, and the Court has found that the ALJ improperly rejected the RFC assessments of Plaintiff's physicians. The ALJ's reason, then, is not valid, much less clear and convincing. Second, the lack of corroborating medical evidence can never be a reason by itself to discount subjective symptoms. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2004) (ALJ may consider lack of corroborating medical evidence so long as it is not the only reason for discounting a claimant's credibility).

The ALJ's next reason for discounting Plaintiff's credibility is that there is "no evidence of severe disuse muscle atrophy that would be compatible with his alleged inactivity and inability to function." (AR 31.) The ALJ cites no medical opinion or medical literature that someone with disabling fibromyalgia necessarily would or should have severe disuse muscle atrophy. None of the six physicians who diagnosed fibromyalgia and found it disabling ever mentioned muscle atrophy or found it odd not to be present. Even Dr. Sedgh failed to mention lack of muscle atrophy in his evaluation. Lack of muscle atrophy does not rise to the level of a clear and convincing reason for discounting Plaintiff's credibility.

The ALJ asserts that Claimant "has described daily activities, which are not limited to the extent one would expect . . . The claimant reported that he is able [to] drive, go to the store and help around the house." (AR 31.) Daily activities inconsistent with allegations of disabling pain are a factor in determining credibility. Bunnell, 947 F.2d at 345-46. The ALJ, however, overstates and misstates the evidence regarding Plaintiff's driving. He stated in a July 10, 2009 Exertion Questionnaire that he can drive a car with an automatic transmission only 5 to 10 miles at a time (AR 165), hardly evidence that he can perform his past relevant work as a full time trucker. Indeed, Plaintiff attached to the same July 10, 2009, Questionnaire a statement that his symptoms "make it impossible to concentrate on driving," that he got tickets for unsafe driving, had an accident due to his symptoms and medications, and lost his Class A medical

certification, and that his medication makes him "dizzy and out of balance and too unstable to drive." (AR 165.) As a result, Dr. Ho found that because of his pain medications Claimant cannot drive. (AR 368, 256.) By the time of the hearing, Plaintiff had ceased driving altogether and given up his car. (AR 54.)

The ALJ also makes too much out of going to the store. (AR 165.) Claimant says that he goes to the store once a week (AR 165) and gets there by walking because he does not drive anymore. (AR 54.) The same is true of helping around the house. (AR 31.) He makes his bed and does dishes for 5 minutes at a time. (AR 165.) The described activities are minimal and plainly cannot be translated into sustained employment 8 hours a day 5 days a week. One does not need to be "utterly incapacitated" in order to be disabled. Benecke, 379 F.3d at 594.

The ALJ's last finding that Claimant's treatment has been "routine and conservative" in nature (AR 31) is flatly invalid. The ALJ cites no medical source for his assertion. Nor does the ALJ specify any more aggressive treatment that is available that likely would be effective that Plaintiff declined. The treatment records make clear that Plaintiff and his physicians conducted extensive tests and tried every indicated treatment for his fibromyalgia. Dr. Lawenda indicated that Plaintiff is taking high dosages of multiple opioid medications as narcotics help the most. (AR 414, 449, 453.) The ALJ's finding is not supported by substantial evidence and contrary to it.

The ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's credibility.

### III.   THIS CASE SHOULD BE REMANDED FOR AWARD OF BENEFITS

The legal standards for remanding for further proceedings or remanding for an award of benefits are set forth in Benecke, 379 F.3d at 593. A remand for further proceedings is appropriate if enhancement of the record is needed; conversely, where the record has been fully developed and further administrative proceedings would serve no useful purpose, the District Court should remand for an award of benefits. Id. More specifically, the District Court should credit evidence rejected during the administrative process and remand for an immediate

award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

The Court has ruled that the ALJ failed to provide legally sufficient reasons for rejecting the RFC assessments of numerous physicians and for discounting Plaintiff's credibility. Crediting the testimony of both the rejected physicians and of Plaintiff, there are no outstanding issues left to be resolved. It is clear from the record that the ALJ would be required to find the Claimant disabled if such evidence were credited. Numerous physicians opined Plaintiff would miss three or more days of work per month. The VE testified that missing that many days of work would preclude all work. (AR 60.)

Thus, further administrative proceedings are unnecessary here. Remand for immediate award of benefits is appropriate.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for an award of benefits.

DATED: <u>July 9, 2013</u>      <u>     /s/ John E. McDermott     </u>
                                         JOHN E. MCDERMOTT
                                   UNITED STATES MAGISTRATE JUDGE